Madam Clerk, would you call the next case? 17-19-35, the state of Sherrod, Illinois. Body, step forward and identify yourself for the record. Good morning. David Ogasalski for the petitioner and the felons. Good morning, Your Honors. Charles Harper for the respondent. Good morning. I think you're both counsels aware of the procedure, the protocol in this courtroom. 15-15, Mr. Ogasalski. Five minutes for rebuttal. Yes, ma'am. Very well. If you're ready to proceed, we're ready to hear. I would love to be. Very well. Good morning. Please, the court, David Ogasalski on behalf of Cheryl Schroeder and George Sheldon, children of the deceit. While the issue on its face may look a little simple, when you look at the case law and the circumstances, it seems to be, I don't want to say unique, because every time I say a case is unique, somebody says, really, what about this case? It's unusual. Let's leave it that way, rather than unique. We have a family that was very charitably dysfunctional, if you will. There were 17, 13 children. Keep your voice up. I'm sorry. I apologize. I've got ringing in the ears, so. I apologize. You have multiple children, and they didn't get along prior to death. There's no secret of that. There was a lot of animosity. There were arguments before death regarding the competence, not simply mental, but I believe the decedent was visually very challenged. At the time of death, there was a will, and there was a prior trust, which was formed during the lifetime of the decedent. The answer before this court relates to the will contest that was filed by my clients. The respondents came before the court, filed the estate, asked to be appointed co-executors. They were. In short order, they're answering a motion to dismiss. They answer a final motion to dismiss saying, quite simply, there's only X number of dollars in the assets of the estate, I think it was under $25,000. The estate is insolvent, and we want the will contest dismissed and the case over. My client's position, initially done by my son, and then I came in later on the reconsideration, was that under the circumstances, which when you come in, you simply say there's no money in the estate. There's a challenge to whether the test drawer was competent. And you say, listen, all the money's gone, including the money that was paid for attorney's fees. That's a rather shorthand procedure to evade any ability for any decedent to find out where the assets went that were subject to question. This is not simply a question. Was there ever a citation to discover assets filed in this case, if there was some dispute about that? Well, there wasn't, and the question of a citation is something that can be filed. The problem there is that the final citation, the executor says, wait a minute, you don't have any standing to do that. I'm the executor of the estate. The trial court raised it. I looked for authority, and I wasn't entirely sure that a citation would have been appropriate. However, we suggested an executor, administrator to collect, which is a statutory alternative. It performed the same function as a citation, and frankly, it's less expensive for everybody involved. What we have here is a simple affidavit executed by an affidavit. But your suggestion was made after the dismissal of the case? Is that what happened? There was a motion to reconsider. Again, you had a minor change of counsel, same last name, different first name. And in preparing for the appeal within 30 days, because my son and I sat down, I said, well, what about this and that? These were alternative probate remedies. We went before the court, and the court listened very carefully. It wasn't, oh, that's a reconsideration, get out of here. He gave it serious consideration. So part of the problem is, again, how does one contest a will when the people who were in charge prior to death may very well have dissipated the assets or, frankly, still hiding the assets? Well, here's the issue that's really before us. We reviewed the decision of the trial court. Yes, sir. And the trial court got the motion to dismiss, and the only issue in a will contest is actually the competency of the seat. That's the only issue according to the Supreme Court. That's the threshold issue. That's the only issue according to our Supreme Court. So when he got a motion to dismiss, he was told there's nothing in the estate. I can't provide any meaningful relief to anybody. I agree with the court. And that was exactly what happened. Right. And here's the problem. What are we talking about? Then you don't have a will contest because whoever is the executor simply comes in and says, there's no money, it's all gone, let's close it. That's a fact issue. That's an affirmative defense. How is it proven here? It wasn't. You had a simple inventory.  I think it was objected to again during the reconsideration as well. I'm trying to recall in the record whether it was objected to. I'm just thinking about when the trial court was deciding the motion to dismiss, what did it have? Oh, I'm sorry. It had a inventory, and no one said anything about it. And during the time that he was considering the motion, he had to perform a final account. There was an objection to the authentication at a minimum because the person, part of it was done by the attorneys, and we can, if you'd like, get to the disqualification issue later. I don't think it's the primary issue. But it's an affirmative, insolvency is an affirmative defense. Even let's say for the sake of argument, Your Honor, there's an inventory. Nobody questions what is currently in the estate. Let's say that inventory is accurate. The question comes, has anything been taken out prior to death that should not have come out? If she was incompetent, I don't think there's really a dispute. If she was not competent to dispose of her assets. But the time the judge made his decision, that question was actually not before him. I respectfully suggest, sir, it was. It was in the original filing that she was not competent. I mean, the issue of what was in the estate was never raised. Well, so I disagree. I think there was a challenge to the, first of all, a legal challenge to the estate. I'm not clear. Let me be clear. Yes, sir. The movements on the motion dismissed asserted a certain amount of money was in the estate. Right. These were the bills, and the estate was therefore insolvent. At the time he decided that motion on mootness, there was no objection as to that, those figures. I think there was an objection to, I see where the court's going, and to be very straightforward, not to, you know, dance on the head of the pen. There was an objection to the inventory itself as a fair representation of what was disposed of and what was actually, see for the sake of argument, there's $2 million floating out there. The problem we have here is the inventory is a court-ordered document. A motion to dismiss based on insolvency, even though they claim it's a 615, it's a 619-type motion. It must show there is no question of fact. There is a challenge based on the conduct of the executors with regard to the assets. The motion is filed, and the court at that point says, well, it says it here. It's insolvent. There's really nothing I can do. What the court should have done was required at least, we suggested an administrator to collect who could have examined it. The reason I suggest that is two parties get into a war, you're going to end up with attorneys fees that are sky high. An administrator has a lot simpler task. He simply brings the people in, looks at the records, makes a preliminary finding, and then he's the court's agent. And he reports to the court. At that point, if there's assets that have been improperly accounted for, then you get into discovery. We tried to suggest the simplest possible. I really don't like doing a parade of horribles, but what we're really talking about here is a decision that says, okay, I will not look past a self-serving statement, even though it's a little contest. The person who is the executor said, here's what she has. It's insolvent. Insolvency is where the problem comes up. The cases I look at really don't address what you do in the insolvency situation. I'm sorry, Mr. Novoselsky. Did I misunderstand or did I not hear that you attempted or that you requested at the trial court level that you be allowed to engage in some form of discovery? That's why we requested an administrator to collect. There was a fairly long discussion before the court. The court was open to the thought, but the question was, let's get an administrator to collect, find out what the assets were, find out if these were all the assets. Let's see what's out there. That was requested. I requested it. Motion for reconsideration. Yes, sir. Which in a function of a motion to reconsider, and I'm not going to beat around the bush, was in the original pleading. At that point, there was a fight over whether the inventory had been properly filed or not. The final account, if you will, was actually attested to after the initial decision. In other words, the court dismissed the case based on something that I think was later acknowledged was not totally proper, lacked the appropriate affidavits. It still does, by the way. A final account isn't governed by the circuit court clerk's rule saying fill this form up. It is supposed to be under oath, under rule 191. It's supposed to attach the papers. It didn't. So you have an inventory that is questionable on its face. We raise that. And now we have an inventory that becomes written in stone the minute it's filed. Now, I think as a matter of precedent, which this court always looks into, you're creating a precedent where people who believe a decedent has been taken advantage of, or their brother or sister is unfortunately usually a family fight, has no remedy. And this isn't just, you know, pie in the sky. My clients had some very fixed views about what should have been there, what shouldn't have been there. The trust issue is kind of a red herring because if she was not competent during this period of time, she wouldn't have been competent to create the trust either. The world contest is much broader. I'm not even entirely sure the trust contest was necessary. So at this point, I mean, I wish I had a case right on point. But unfortunately, I've never found one. This may be, again, might be more unique. This is an unusual legal situation. I think it's surely legal. I don't know if it's fact-dependent. Thank the court for its attention. I ask the matter to be heard. Would you mind, Mr. Novosofsky, Yes, ma'am. Concluding your argument, just addressing briefly the issue on disqualification. Yes, ma'am. This is not your standard. It's an estate. The will itself was drafted and in part witnessed by Quarles and Brady. At the time we filed a will contest, the drafter, Ms. Bavar, I believe, was still a member of the firm. But at the time the will was drafted, she was originally with Kohfeldt and Moretti. Ms. Bavar, and I believe, I don't know if Ms. Malis was with her, migrates over to Quarles and Brady at some point while the decedent is still alive. If you look at the motion to reconsider, there's a fair amount of what I call testimony offered by Ms. Malis. Now, their response is, well, she wasn't under oath. My response is any lawyer who addresses the court is charged with the equivalent of oath and beyond because there are penalties not simply to not saying something correctly but professional penalties. So we have testimony supported by, and testimony of competency I would add, supported by one of the attorneys in the case. One of the supposed reasons for insolvency is they had been representing the decedent for many years. And lawyers charge money. So one of the questions would have become not simply her competence but whether the money would have been paid to Quarles and Brady prior to death, which had already been paid out. In other words, this wasn't simply, there was a small bill here, and that's all we've done for the last few years. We thought you shouldn't have an advocate in there, the lawyer. They should have brought in a different firm. What rule are you citing for disqualification on that basis? Would that be 1.9? It's the one that talks about a personal bias or interest in the case. But that would be 1.7 where the lawyer has a personal interest in the case. I grabbed the wrong readers this morning. It's in the brief and I apologize. I don't know if they look in the brief. But you hit a certain age and you get a little trouble reading. You should see the Coke bottles I have to wear. That's my position. It's unusual. Yes, a lawyer who drafts an estate is not necessarily disqualifiable or subject to disqualification. But this is not a situation where the issue is whether a lawyer was given a fee or given a loan. This is basically nothing other than fees, and there's no statement that anything was done wrong. There would be a malpractice case if, in fact, they put together a will and a trust, and if they did so at the time, they should have known. See, the competence is the issue. And I'm not interested, or I don't know if my clients are interested in that either. They want to know where the money is. But you have a lawyer and a firm that is defending its own conduct and its conduct that predates the death. It also goes to there's a firm. What conduct are they defending? Overbilling, writing a will for a woman who was blind. Blind people can't have wills? You can. They have to be done under certain circumstances, and there's one currently floating around, I think, in this court someplace, where the will was read to the decedent, and there was no record of who did it or the circumstances. The last probate seminar I attended, and that was probably 15 years ago, the suggestion was made that you should get permission of the testator to record the will being read to the testator. It's a belt and suspenders, but it takes away things like this right now. In other words, caution, measure twice, cut once. So, yes, blind people have wills. All kinds of people have wills. No animals, though. That's my daughter. She's a pedotype. And if the court has no further questions, I would like to reserve my time for rebuttal. Thank you for your attention this morning, and, again, I believe this matter should be remanded to conduct that SAC inquiry. It may not be anything, but we'll never know without it. Thank you very much. May it please the Court. Petitioners failed to file a challenge to the trust within the jurisdictional limitation. As an initial matter, petitioners have forfeited this argument because nowhere in their opening brief do they make any argument to reverse the trial court on this finding that the statute of limitations was not compliant with to file the trust contest. And I believe I heard Mr. Novoselsky just argue that the challenge to the trust was not significant. So for forfeiture alone, this court need not consider reversal of the trial court's decision with respect to statute of limitations. But I would also submit that the trial court got that decision correct. The statute of limitations for a trust contest, now that that statute of limitations has been incorporated into the probate act, is jurisdictional and must be strictly adhered to, as this court held in a state of Lucio. So for those reasons, the trust contest was not properly before the trial court because it was not timely filed. So petitioners' claims relating to the establishment of the trust and the funding of the trust were not properly before the trial court. The will was admitted to probate and letters of office were issued on October 5, 2015. The trust contest was not filed until September 28, 2016, well beyond the six-month period. Well, assuming that we accept your argument with respect to forfeiture of the trust issue, can you address the issue as it relates to the will and the dismissal of the contest? Yes, Your Honor. As the trust contest relates to the will or just the will contest in general? The will. So the will challenge is what was properly before the trial court. And specifically, the challenge was that the decedent lacked testamentary capacity to make the will. Now, we argued, as Your Honor recognized, we argued under 619A9 that there was an affirmative matter that defeated the claim. And that affirmative matter was the fact that the estate was insolvent. The funeral expenses in this case were over $20,000, and the amount in the estate was a little over $9,000. So as a first-class expense, the funeral expenses must be paid first, and there was nothing left in the estate to pay anyone else, including, and it is correct that on the first and final accounting, you will see a line item for $1,400 for services rendered by Quarles and Brady to the decedent prior to her death. But that money was not paid to Quarles and Brady. The estate did not pay any money to Quarles and Brady. Now, with respect to the sufficiency of the proofs in support of the 619A9 motion, there has been an argument raised in this court for the first time that an affidavit under Rule 191, Supreme Court Rule 191, should have been required in order for the court to grant the motion to dismiss. Again, this argument is forfeited because it was not raised in the trial court. But more importantly, there are significant documents that the court relied upon that did establish the proofs necessary for the court to decide this one single fact necessary, the affirmative matter to defeat the claim, and that was that the estate was insolvent. And those two documents are, as the court recognized, the inventory, which was submitted pursuant to the Probate Act under the penalties of perjury, as the Cook County form that it was submitted on says, and additionally, the first and final accounting, which was initially submitted without a 1109 verification, 1109 of the Code of Civil Procedure, and then was later an amended first and final verified accounting was submitted attaching by both co-executors a Section 1109 verification. And that was, there was something that counsel said in his argument that I'd like to correct for the record, that verified first and final accounting was filed in the trial court before the response to the motion to dismiss was filed, before the written response was filed, and long before the oral argument and the motion to reconsider and the oral argument on the motion to reconsider. So this evidence was before the trial court at the time the trial court made its decision. Importantly, I'd also like to address or point the court to Section 14-3 of the Probate Act, which deals with inventories and appraisals as evidence. And under that section, inventories may be given in evidence in any suit against the representative, the co-executors, but are not conclusive for him if other evidence is given that the estate was worth or sold in good faith for more or less than its appraised value. But in this case, there was no other evidence. There was no other evidence presented. What did petitioners do in the trial court? Or what did they not do, more importantly, that they could have done? They could have objected to the inventory. They could have filed a petition for citations to discover assets under Section 16.1 of the Probate Act, which says that upon the petition, therefore, by the representative or by any other person interested in the estate, that's 755 ILCS 5-16-1. And furthermore, under Section C, the Probate Act specifically anticipates the situation in which a representative is the respondent, saying, if the representative is the respondent, the court may appoint a special administrator to represent the estate. So, in fact, in this case, the petitioners could have filed a petition for citation to discover assets if they believed that there was this sort of pilfering and malfeasance that they later alleged that really, honestly, Your Honors, comes up for the first time on the oral argument on the motion to reconsider. And even at that point, when it comes up, what counsel argues is, hypothetically, there could be other tangible property. There could be other assets that were not included. But there was no petition filed. There was nothing filed to say we believe this is the case and we want a citation to discover assets issued against the co-executors, the other heirs, the other beneficiaries under the will. There were no citations to discover assets issued at all in this case. Finally, I'd like to address this request for the administrator to collect. This court is correct to recognize that that request only came for the first time on the motion to reconsider. But more importantly, the administrator to collect is something that happens under section 10-1 of the Probate Act. There are two reasons to appoint an administrator to collect. One is if a person is missing. So a person has gone missing. We're not sure whether they're actually dead or not. An administrator to collect can be appointed in that situation. And the other is when a contingency happens which is productive of delay in the issuance of letter of office and it appears that waste could occur as a result. In this case, there was no delay in the issuance of letters of office. They were issued on October 5, 2015, at the beginning of this case. And significantly, section 10.5, again looking at the administrator to collect section of the Probate Act, 10.5 says termination of powers. On the issuance of letters of testamentary or of administration or the satisfactory establishment of the survival and location of the missing person, the power of an administrator to collect ceases and his letters shall be revoked. So there would be no basis in this case. Even if there had been a timely request for an administrator to collect, that would not be something that would be a remedy that should have been invoked by the court. The proper remedy, had there been a timely challenge to the contents of the estate, would have been to object to the inventory and, if necessary, to file a petition for a citation to discover assets. Finally, I'd just like to briefly address the disqualification issue. Petitioners' arguments for disqualification are based on some incorrect facts. First, Attorney Malice was not a witness to the will. The record clearly establishes this. There were two witnesses to the will, neither of which were Attorney Malice. Second, Attorney Malice did not draft the will or participate in the drafting of the will. Other than petitioners' claim that she did, there is nothing in the record to establish such. Third, Attorney Malice did not offer any argument or testimony that the payment of the fees to Quarles and Brady left the estate insolvent. Again, this is just another argument that counsel has made, but there's nothing in the record to support any of those claims. Attorney Pevar did draft the will in this case. Ruth Pevar was an attorney under Eddie and Harris at the time. She was an attorney at Quarles and Brady, and she did retire in 2014. And that is in the record. There was actually an affidavit from the office manager of Quarles and Brady who submitted an affidavit stating that Attorney Pevar had retired from the firm in 2014. So not even at the time that the motion to dismiss was pending, but even before this will was admitted to probate or petitioners filed their initial petition to have the will admitted to probate, Ms. Pevar was no longer an attorney at Quarles and Brady. So, again, there's nothing in the record to support the claims that Quarles and Brady was paid anything by the estate. And, in fact, the verified first and final accounting establishes that there were no assets in the estate to pay Quarles and Brady. If Your Honors have no questions, I will ask that this Court confirm the trial. Thank you. Thank you. Interestingly enough, I think one of the statements from the counsel I will agree with, because I think it is significant. We kept hearing, nobody objected to the inventory. Motion to dismiss pointed out the inventory wasn't verified. There wasn't a date. What's the response? Not a motion for leave to file it, not a request to conduct, but given leave because of A, B, or C, they simply filed it. The Court said, well, okay, now it's verified. So this is not an issue that just came out at the motion to reconsider or was brought up here. Next question is, it comes back to the same thing. There's very little law in the administrative collect. It's done fairly routinely, but that's apocryphal. I mean, that's not evidence you can consider, but it's done routinely in the probate division because citations to collect are extraordinarily expensive, particularly with this many children. And you have a woman, by the way, who is not simply blind. She was deaf, and she had already been diagnosed long before her death as suffering from advanced dementia. So this is the kind of case that maybe makes the poster child for exalting form over substance, but not even form here. I believe the one thing that is clear is that a motion to dismiss because an estate has been solvent puts a burden of proof on the moving party. Now, again, could we have walked in and fought it tooth and nail and spent a lot of money? At that point, our position was judged. First of all, you had a bad inventory. Second of all, simply filing an inventory doesn't include all the papers. Where is this? Where is that? The other thing I just heard is Quarles and Brady, who actively represented this woman, not only through Ms. Bavar, because we were adverse to each other prior to the death, only billed $1,400? I'm not suggesting counsel is mistaking things, but counsel said it's at the time of death there was a $1,400 token bill. One of the issues became, and that's one of the other reasons, we have a lawyer who's a potential witness acting to defend the firm's conduct in billing. So today I'm a little surprised. If one attorney is, arguably, if we say P. Bar is a witness, that doesn't disqualify the rest of the firm, does it? It depends on the circumstances. I agree with you, Your Honor. It's a fact-intensive question. The court didn't want to do it. The court simply said no. And that's the problem here. I'm not suggesting this case is, you know, a simple down the line. The initial, first of all, the trust issue I think is a red herring because the will contest is, in fact, she wasn't competent at the time she had caused Brady to do her trust. Then the trust falls. A trust contest isn't going to deal with a will because the will is a separate document. So you have almost like a subset. The quicker way to do it and the more efficient way to do it is to simply file a will contest. Both are going to be based on the fact that she was blind, deaf, and had already been diagnosed with severe dementia and advanced dementia. So, again, maybe it's more of a legal issue here. The first filing was after the initial filing. You had an affirmative defense raised. I cannot find a single case that says it is sufficient to ignore Rule 191 in a probate setting. Counsel's correct. If the party who's a proponent is also, let's say, the executor, they can use things as evidence. But evidence doesn't come in by itself. There has to be a foundation for that evidence. So if we had that here, the question of foundation would be, OK, let's see the bank accounts themselves, not what's in it today or the date of death. You can go back and get five years by pushing a button. Let's see where all that money went. So, again, the case here deals really with a straightforward procedure. It's akin to a summary judgment where somebody walks in and says, OK, I wasn't guilty. Excuse me, I didn't hit the car. And the other person said, yes, you did. Well, prove that you hit me. That's what we're talking about. And I pointed out in the brief there is no obligation on the party opposing the affirmative defense to prove their case at that point. It's on the party. I'm not going to bore this Court with, you know, the rules on summary judgment, which are similar to a 619 motion. It says you have to prove, you have to take out any question of fact. Then you win. Here, when we pointed out not only was the inventory bad, but there were substantial issues regarding, there was a claim that the decedent was not confident. The Court could have dealt with that very simply instead of simply saying, OK, very insolvent, and I'm not critical of the judge. It's a strange provision. There is very little law on it. It's insolvent. It trumps all the rules of civil practice. It trumps the obligation of the moving party to offer competent legal support. Again, I respectfully ask this Court to reverse it. It's not a case where I can put my finger on a case that's on all fours or I would have been standing here waving it over my head. Thank you for your attention this morning. I appreciate it. Yes, the matter be reversed. Thank you, Mr. Nowakowski. Thank you, counsel. This case was well argued and briefed. The matter be taken under advisement with the disposition issued in due course. Thank you very much.